UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DEANNA MARIE SMITH,<br><br>    Plaintiff,<br><br>    v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | NO. 2:16-cv-00258-SAB<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Summary Judgment, ECF No. 11, and Defendant's Motion for Summary Judgment, ECF No. 13. The motions were heard without oral argument. For the reasons set forth below, the Court **denies** Plaintiff's motion, **grants** Defendant's motion, and **affirms** the administrative law judge (ALJ).

**I.    Jurisdiction**

On August 9, 2012, Plaintiff filed an application for disability benefits, and also filed a supplemental security income (SSI) application. Plaintiff alleged that she is disabled, beginning August 30, 2008, due to irritable bowel syndrome; autism; Post Traumatic Stress Disorder (PTSD); gluten intolerance; generalized anxiety disorder; Obsessive Compulsive Disorder (OCD); stress fractures in both

**ORDER** +1

legs; left shoulder injury; and brain injury and seizures.

Her applications were denied initially on December 10, 2012 and again denied on reconsideration on February 28, 2011. A request for a hearing was made on March 31, 2013. On December 9, 2014, Plaintiff appeared at a hearing in Spokane, Washington before ALJ Jesse Shumway. Vocational Expert (VE) Sharon Welter participated, as did Medical Expert (ME) Dr. Minh Vu, and ME Dr. Nancy Winfrey. Plaintiff was represented by attorney Lora Lee Stover. Ms. Stover represents Plaintiff at this Court.

The ALJ issued a decision on January 28, 2015, finding that Plaintiff has not been under a disability within the meaning of the Social Security Act, and denying benefits. Plaintiff timely requested review by the Appeals Council, which was denied on May 17, 2016. The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner. 42 U.S.C. §405(h).

Plaintiff filed a timely appeal with the U.S. District Court for the Eastern District of Washington on July 14, 2016. The instant matter is before this Court pursuant to 42 U.S.C. § 405(g).

**II. Sequential Evaluation Process**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §423(d)(2)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Step One: Whether the claimant is engaged in substantial gainful activities. 20 C.F.R. § 416.920(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. 20 C.F.R. § 416.972(a); *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 416.971. If she is not, the ALJ proceeds to step two.

Step Two: Whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 416.909. If the impairment is severe, the evaluation proceeds to the third step.

Step Three: Whether the claimant's impairment meets or equals one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering Step Four, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 416.920(e). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.

Step Four: Whether the impairment prevents the claimant from performing work she has performed in the past. 20 C.F.R. § 416.920(f). If the claimant is able

to perform her previous work, she is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

Step Five: Whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience. 20 C.F.R. § 416.920(g).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

## III.  Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). But "[i]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir.

1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## IV. Statement of Facts

The facts have been presented in the administrative transcript, the ALJ's decision, and the briefs to this Court; only the most relevant facts are summarized here. At the time of the hearing, Plaintiff was thirty-four years old. Plaintiff has a high school degree and has attended college but did not obtain a degree. She has past relevant work as a nurse assistant; laborer; sales clerk; data entry clerk; gate guard; and forest firefighter. She has not worked since August, 2008.

Plaintiff testified that she served in the United States military and received an honorable discharge after working primarily as a data entry clerk. While in the military, Plaintiff revealed her gender identity concerns and was discharged. She began gender reassignment with a civilian endocrinologist in 2009. Subsequently, Plaintiff attended college at Eastern Washington University until there was an issue with her financial aid. She had received special accommodations during college, including not being required to study in a room with fluorescent lights.

Plaintiff further testified that she has headaches, which are due to fluorescent lighting and noise. Plaintiff likewise stated that she is gluten intolerant, has seizures, and experiences chronic leg pain. She has left shoulder pain which is made worse with prolonged sitting, and she cannot reach overhead with her left extremity. This limits her to lifting no more than twenty pounds. Plaintiff also experiences anxiety limiting her ability to be around people and experiences conflict when dealing with others.

## V. The ALJ's Findings

The ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2013.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 30, 2008, the alleged onset date. (Tr. 18).

At step two, the ALJ found Plaintiff has the following severe impairments: left shoulder injury, recurrent headaches or pseudoseizures, generalized anxiety disorder, depression, and personality disorder. (Tr. 18).

At step three, the ALJ found that Plaintiff's impairments or combination of impairments does not meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 21).

The ALJ concluded that Plaintiff has the following residual functional capacity (RFC):

> The claimant has the residual functional capacity to perform medium work[] as defined in 20 CFR 404.1567(c) and 416.967(c) except she can lift overhead only occasionally with her left upper extremity. She can frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, and never climb ropes, ladders, or scaffolds. She must also avoid concentrated exposure to extreme heat and noise, and all exposure to unprotected heights and moving mechanical parts. She can perform simple, detailed and complex tasks, with no production quotas. She can make simple work-related decisions, but cannot work in groups, and should have only occasional, superficial contact with the public. She would be absent from work an average of 1/2 day twice a month.

(Tr. 22).

At step four, the ALJ found Plaintiff is capable of performing past relevant work as a data entry clerk (DOT 203.582-054, SVP 4, sedentary). (Tr. 28). As a result, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since August 30, 2008. (Tr. 29).

## VI. Issues for Review

1. Did the ALJ commit reversible error in rejecting Plaintiff's testimony as not fully credible?

**ORDER** +6

2. Did the ALJ commit reversible error in assessing Plaintiff's functional capacities?

3. Did the ALJ commit reversible error by failing to pose a proper hypothetical to the VE?

## VII. Discussion

### 1. ALJ's credibility decision

The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 23). Plaintiff contends that this finding was not based on any convincing evidence and, consequently, resulted in harmful error. Specifically, Plaintiff assigns error to the ALJ's credibility determination on the grounds that her testimony is supported by the objective medical evidence and that her participation in school and with the Department of Vocational Rehabilitation reflects her desire to be employable, thus supporting her overall credibility.

In determining whether a claimant's testimony regarding symptoms is credible, an ALJ must first determine if the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably cause the symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). If there is no evidence of malingering, the ALJ can only reject the claimant's testimony about her symptoms by "offering specific, clear, and convincing reasons for doing so." *Id.* (internal citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

As an initial matter, the Government contends that Plaintiff has waived any argument that the ALJ committed harmful error in assessing Plaintiff's credibility. The Government correctly notes that Plaintiff has not cited any legal authority in her opening brief challenging the reasons by the ALJ for the weight given to her

**ORDER** +7

physicians' assessments. Rather, Plaintiff points to observations made by treating physicians demonstrating her various barriers to employment, including that she suffers from chronic headaches and/or pseudo-seizures; limitations with regard to lighting and a learning disability; recommended counseling, medication, job coach, and workplace accommodations; and anxiety. The Court declines to find that Plaintiff waived her arguments regarding credibility and will determine whether the ALJ's credibility determination is supported by "specific, clear and convincing reasons."[1] *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

In finding that Plaintiff has the RFC to perform medium work, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. The ALJ concluded that while Plaintiff claims a complete inability to work, her activities and medical reports do not support a complete inability to work. Specifically, the ALJ noted that Plaintiff has been living with, and assisting, her sick mother; managed her own self-care; babysat; did not require assistance with activities of daily living; could walk three miles and stand for four hours; and that her cognitive functioning was intact. Additionally, the ALJ considered that Plaintiff attended college full-time from May 2008 through 2012, which is inconsistent with her allegation that she is completely disabled, as college requires several of the same skills required of full-time work. During college, Plaintiff reported that her classes were not stressful, that she had no difficulty interacting with others, and left because she lost her financial aid. The ALJ concluded that the evidence conflicted with Plaintiff's statements that she struggled in college, noting that she ended her studies not because of difficulties, but because of financial reasons. The ALJ further noted

---

[1] Where, as here, Plaintiff "has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering,[] [the Court] review[s] the ALJ's rejection of her testimony for 'specific, clear and convincing reasons.'" *Burrell v. Colvin*, 775 F.3d 1133 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1112).

**ORDER** +8

that Plaintiff worked at Goodwill in January 2014, which, although not a disqualifying activity, indicates that Plaintiff's daily living activities have been greater than generally reported, at least at times.

When a claimant's testimony regarding limitations is inconsistent with daily activities found in the record, the ALJ may properly discredit Plaintiff's testimony. *See, e.g.*, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The issue here is not that these daily activities are reflective of ability to work per se, but that they reflect the ALJ's conclusion that Plaintiff's testimony is inconsistent with her symptomology. There is substantial evidence in the record to support the conclusion that these activities were recent and frequent enough to allow the ALJ to discredit Plaintiff's testimony.

The ALJ also concluded that Plaintiff's allegations that she is limited by a torn rotator cuff in her shoulder are undermined by the fact that she was never diagnosed with such and that there is little mention of shoulder problems in the longitudinal treatment record. The record demonstrates that while Plaintiff complained of left shoulder injury after work injury, there is no evidence that Plaintiff was ever diagnosed with a left rotator cuff tear. Plaintiff does not assign error to the ALJ's finding in this respect. Nonetheless, the ALJ found that Plaintiff had a severe impairment with regard to her left shoulder injury and gave Plaintiff some credit regarding her limitations in this respect. This finding is supported by substantial evidence in the record.

Additionally, the ALJ determined that Plaintiff's credibility was compromised by evidence that she is motivated by secondary gain. Specifically, the Veterans Administration (VA) noted that Plaintiff came in for evaluation and stated her wish to be diagnosed with as much as possible so that she could receive disability compensation; the evaluator noted that Plaintiff had a clear agenda for going to the VA, and it was not for therapy. Secondary gain means "external and incidental advantage derived from an illness, such as rest, gifts, personal attention,

**ORDER** +9

release from responsibility, and disability benefits." *Burrell*, 775 F.3d at 1139 n.5. The treatment notes indicate that Plaintiff's significant other said that "they would like to get [Plaintiff] diagnosed with as much as possible to get compensation later." (Tr. 746). This explicit statement supports the ALJ's decision to discount Plaintiff's statements as not fully credible. Plaintiff provides no explanation for these statements and, again, does not assign error to this finding.

The ALJ further found it significant that Plaintiff missed a significant number of mental health counseling appointments, suggesting that her condition was not severe enough for her to show up for treatment. Plaintiff's subjective statements that she had trouble interacting with people were likewise undermined by the fact that she attended support groups and was able to attend school for several years. Plaintiff provides no explanation for her failure to attend appointments or her attendance of support groups.

Here, the ALJ properly provided specific, clear, and convincing reasons for discounting Plaintiff's statements regarding her limitations. The ALJ properly noted the inconsistencies between Plaintiff's testimony and the activities found in the record as a reason for finding Plaintiff less than fully credible. *See Orn*, 495 F.3d at 639. The ALJ likewise properly relied on Plaintiff's failure to follow through with several mental health counseling appointments, as an inability to follow treatment can discredit a plaintiff's complaints on those symptoms. SSR 96-7p. Given the above findings and legal conclusions, there was substantial evidence allowing the ALJ to discount Plaintiff's testimony, and the ALJ gave clear and convincing reasons for doing so.

### 2. Residual Functional Capacities

Plaintiff contends that the ALJ erred in assessing her RFC by not providing a complete assessment of medical evidence. Specifically, Plaintiff claims that the ALJ ignored Plaintiff's limitations regarding her need to avoid fluorescent lighting and to have a tolerant work supervisor as discussed by Dr. Winfrey, as well as

work monitoring and decisionmaking as discussed by Dr. Rosenkrans and Kevin Shearer's report. (Tr. 308).

**Light Sensitivity.** Plaintiff testified that fluorescent lighting frequently brought on migraines and that she can only be exposed to them for approximately 40 minutes at a time. (Tr. 85-86). She also testified that her migraines were brought on by noises from trains and warning lights on the back of emergency vehicles. (Tr. 86). Plaintiff further testified that she would get headaches in class, which required a break. (Tr. 87).

Plaintiff points to no objective medical evidence regarding her need to avoid fluorescent lighting. Rather, Plaintiff testified that she had special accommodations at Eastern Washington University to study away from fluorescent lights. However, the record demonstrates that Plaintiff's claim that she suffers from migraines due to sensitivity to fluorescent lighting is based solely on her subjective claims. In making an RFC determination, the ALJ may take into account those limitations for which there is record support that do not depend solely on Plaintiff's claims. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, because there is no objective medical evidence that Plaintiff's symptoms are caused by sensitivity to fluorescent lighting, and Plaintiff's limitations are based solely on her own claims, the ALJ did not err in assessing Plaintiff's RFC in this respect.

**Tolerant Work Supervisor.** Plaintiff further contends that the ALJ did not consider the testimony of Dr. Winfrey regarding Plaintiff's need for a tolerant work environment and supervisor in assessing her RFC. However, it appears that the ALJ did, in fact, consider the need for a tolerant supervisor in his assessment. Specifically, the VE testified that most supervisors are tolerant and that the need for a tolerant supervisor would not affect any of the answers provided by the VE regarding past relevant work or available work in the national economy. (Tr. 114). Thus, even assuming that Plaintiff is correct that the ALJ should have considered

Plaintiff's need for a tolerant supervisor in his assessment of Plaintiff's RFC, this did not constitute harmful error, as the VE testified that the need for a tolerant supervisor wouldn't affect her job analysis.

**Work Monitoring.** Plaintiff argues that the ALJ erred in failing to consider the suggestions by Dr. Frank Rosekranz, Ph.D., and Kevin Shearer that Plaintiff required a work environment where someone could assist her in making and carrying on work goals, and assist with behavior monitoring and decision making in assessing her RFC. Thus, Plaintiff contends, the ALJ's RFC assessment is deficient and does not constitute a complete assessment of Plaintiff's limitations.

The ALJ discounted the opinion of Mr. Shearer, working under the supervision of Dr. Rosenkranz, as "sharply inconsistent with [Division of Vocational Rehabilitation's (DVR)] vocational evaluation[2] and the well-reasoned testimony of Dr. Winfrey, and is not supported by the kinds of specific observations and findings cited by those sources." (Tr. 26). The ALJ further noted that Mr. Shearer's "report is internally inconsistent, as the GAF score he assigned suggests only moderate impairments, not serious impairments like inability to independently analyze and/or solve problems, weigh alternatives, and/or make prudent decisions; and a need for frequent ongoing supervision to begin and carry through with goals and plans, to monitor her own behavior, or make decisions." *Id.* Plaintiff does not assign error to the ALJ's decision to discount the opinion of Mr. Shearer. Indeed, the ALJ gave specific reasons for discounting the opinion of Mr. Shearer, noting that his opinion conflicted with the DVR's assessment and was internally inconsistent.

---

[2] In July 2013, Plaintiff participated in an assessment with DVR in which she did office work several hours per week. DVR determined that Plaintiff's fine and gross motor skills were very good, and that she completed in two days tasks which would have taken most workers a couple weeks. She was able to understand multi-step complex instructions easily, had a good ability to accept supervision and handled correction very well. (Tr. 26, 293-298).

**ORDER** +12

In assessing Plaintiff's RFC, the ALJ is not required to incorporate evidence in the form of the opinions of Plaintiff's treating physicians where those opinions are permissibly discounted. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). An ALJ may permissibly discount the opinion of an evaluating physician where that physician's opinion is not supported by objective evidence, contradicted by other statements and assessments of Plaintiff's medical condition, and based on subjective claims. *Id.* at 1195. Here, Mr. Shearer evaluated Plaintiff based on a referral from DVR. He concluded, based on Plaintiff's claims, that Plaintiff will "require supervision on a frequent or ongoing basis to begin and carry through with goals and plans, to monitor own behavior or make decisions." (Tr. 494). However, as the ALJ noted, Mr. Shearer's opinion is contradicted by DVR's vocational evaluation and the testimony of Dr. Winfrey that Plaintiff could perform simple, detailed, and complex tasks, and make simple work-related decisions, constituting only moderate impairments. Additionally, the ALJ found that the GAF score is internally inconsistent with Mr. Shearer's overall report and that his opinions were not supported by the kinds of specific observations and findings cited by DVR and Dr. Winfrey. Accordingly, the ALJ properly discounted Mr. Shearer's opinion, and was not required to consider it in his determination of Plaintiff's RFC.

### 3. Proper Hypothetical

Plaintiff further contends that the ALJ failed to pose a proper hypothetical to the VE that included all of her limitations. Plaintiff only points to her need to avoid fluorescent lights as an improperly omitted factor in this regard. The ALJ posed the following hypothetical to the vocational expert:

> This individual is capable of performing a full range of medium work with the following exceptions. Reaching overhead on the left side can only be occasional. There can only be frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching and crawling. Never climbing ladders, ropes or scaffolds. Never exposed to unprotected

>heights or moving mechanical parts. Only occasional exposure to extreme heat. Only moderate exposure to noise. Only occasional exposure to fluorescent lighting. This person in terms of mental limitations can perform simple, detailed and complex tasks but never subject to strict production quotas. The individual is limited to simple work related decisions, cannot work in groups, can only have occasional superficial contact with the public and that's it.

(Tr. 106-07). The VE stated that she could not address the florescent light limitation in the hypothetical. This is so, she stated, because the VE had never surveyed how many employers use florescent lights and that it has never been a factor in a job analysis. (Tr. 107).

As a result, the ALJ changed the hypothetical to state that the worker could only be occasionally indoors. (Tr. 107). The VE noted that this eliminated a number of jobs, including all of Plaintiff's past relevant work. (Tr. 108). The VE concluded that with the indoor restriction, an individual could perform the job of outside deliverer and carwash attendant, automatic. (Tr. 109). In response, the ALJ again altered the hypothetical, eliminating the indoor restriction, and adding that the individual is going to be absent from work an average of half a day twice a month. The VE concluded that the individual would be able to perform Plaintiff's past relevant work of laborer, stores and data clerk. (Tr. 111). The VE also determined that such an individual could perform jobs in the economy of fish cleaner. The ALJ ultimately concluded that Plaintiff could perform past relevant work as a data entry clerk at Step Four of the Sequential Evaluation Process.

Where the hypothetical posed by the ALJ to the VE contains all of the limitations that the ALJ found credible and supported by substantial evidence in the record, the ALJ's reliance on testimony the VE gives in response to that hypothetical is proper. *Bayliss*, 427 F.3d at 1217. As noted, the ALJ properly discounted Plaintiff's testimony as "not fully credible." Plaintiff's limitations with regard to sensitivity to fluorescent light are based solely on her own claims and

**ORDER** +14

not supported by the objective medical evidence. Indeed, Plaintiff does not point to any objective medical evidence in the record, other than a suggested academic accommodation, supporting her contention that her migraines are brought on by fluorescent light. Although the VE was unable to address the fluorescent lighting factor in response to the ALJ's hypothetical question, this does not constitute harmful error. Even without this limitation, the hypothetical posed contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.

## VIII. Conclusion

The ALJ's determination was based upon substantial evidence in the record. The ALJ provided specific, clear, and convincing reasons for not finding all of the claimant's self-described symptoms to be fully credible. Based on his appropriate credibility determination, the ALJ properly disregarded self-described symptoms in determining Plaintiff's RFC and concluded that Plaintiff could perform the past relevant work of data entry clerk. In sum, the ALJ's determination was based on substantial evidence and was well within the scope of deference which this Court must accord the ALJ.

//
//
//
//
//
//
//
//
//
//
//
//

**ORDER** +15

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is **DENIED**.
2. Defendant's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.
3. The decision of the Commissioner denying benefits is **affirmed.**
4. The District Court Executive is directed to **ENTER** judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **CLOSE** this file.

**DATED** this 11th day of April, 2017.



Stanley A. Bastian
United States District Judge

**ORDER** +16